PROYOSTY, J.
On March 11, 1909, plaintiff entered into a contract with the Busch-Everett Company by which he “granted, bargained, sold, and conveyed” to said company, its heirs and assigns, “all the oil and gas in and under the following described land, together with the right of ingress and egress at all times for the purpose of drilling, mining, and operating for gas, oil, or water and to conduct all operations, to erect storage tanks and other necessary structures, and to lay all pipes necessary for the production, mining, and transporting the oil, gas, and water, with the right to use sufficient water, gas, or oil to operate said property,” with the right reserved to himself to have free of cost sufficient of the gas produced for the use of one dwelling house on the premises. “No well shall be drilled within 200 feet of any building now on said premises” without his consent. Then follows a description of the land by sections and quarter sections. A special clause extended “all the conditions” of the contract to the “heirs, executors, administrators and assigns” of the Busch-Everett Company.
On August 27, 1913, said company assigned its rights under said contract to the Pasadena Petroleum Company. A litigation which arose between plaintiff and the Busch-Everett Company was compromised by a certain part of the land being released from the contract, and the contract being otherwise “confirmed” by the plaintiff to said company and its assign, the Pasadena Company; the latter company assuming “all the obligations” of the former company under the contract.
In March, 1914, the Pasadena Company transferred all its mineral contracts, including the said contract to the Producers’ Oil Company.
After said companies had begun operations in the exploitation of said land for oil and gas, some of the standing timber on said land was destroyed, and practically all the fences. Plaintiff sues the two said companies in damages in solido for the value of the timber and fences thus destroyed, and for the loss sustained as the result of his being deprived of the use of said land for pasturage by reason of the fences having been destroyed.
The facts are that after the oil wells began producing on the land in question no respect whatever was paid either to the fences or the timber; the timber was cut down wherever required for the convenient drilling and operating of the wells; and the fences were driven through, or 'pulled down, wherever convenient for passage boil» by these companies and by other companies operating on neighboring lands.
Plaintiff recognizes that the defendant companies had the right to cut down and remove or use the timber wherever necessary for the convenient exploitation for oil and gas, but contends that more timber was destroyed than necessary.
Granting this to have been so, the plaintiff does not show even approximatively to what extent the destruction of timber exceeded the rightful limit, or, indeed, even with certainty that it exceeded to any extent.
The evidence does show positively that some of the fence destruction was by the employés of the defendant companies, but is too indefinite to serve as a basis for judgment in any fixed amount.
[1] The theory of the suit is that the defendant companies were lessees of the land, and as such were under the same contractual obligation as ordinary lessees to maintain the property in the same state in which it was when taken possession of under the lease, and that therefore they are responsible for all damage done to the premises, no mat *535 ter by whom done. But this theory does not fit the facts of the case. These companies were not ordinary lessees of the land. Their rights thereon were altogether special and specific, and so were their corresponding obligations, and the latter did not include police supervision and protection of the premises. The possession of the land remained 'in plaintiff, except in so far as was necessary for the exercise of the right of ingress and egress conferred upon the defendant companies by the said contract, and the right to occupy and utilize the surface of the land to the extent required for the oil and gas exploitation.
The exercise of these rights by the companies had, of course, to be “as a good administrator” (O. O. art. 2710); but nothing shows that the said rights were exercised differently from this. The damage to the fences was entirely disconnected with, or foreign to, the contract.
The fences and the. timber were not in the charge of these companies. Nothing shows that there was any need of them for the enjoyment and exercise of all the rights under said contract. In fact, their wanton destruction, complained of by plaintiff, would go to show that they were more in the way of these oil operators than otherwise — an obstruction and an annoyance. The party in the possession and enjoyment of them was plaintiff himself. If he needed them for the protection of his pasturage, the function of preventing their destruction pertained to him, and not to the defendant companies, who were not in possession of them and had no need of them.
Another theory upon which liability for the entire damage is sought to be fastened upon the defendant companies is expounded in the brief of learned counsel as follows:
“The evidence shows that there is a kind of courtesy between the oil companies under which an oil company in possession of property and developing the same permits the employes of other companies to enter upon the premises and to exercise thereon the same privileges, as regard the right of ingress and egress, as is enjoyed by it under its lease, and that on this account the rights of private individuals regarding leased premises are ignored when those premises are being developed by the lessee, though respected and recognized until such development begins. Recognizing this fact, no act of trespass upon plaintiff’s premises was made prior to the Pasadena Petroleum Company’s taking possession thereof for drilling operations; but, immediately following the beginning of the operations, the agents and employes of the various oil companies, together with the agents and employes of the Pasadena Company, entered at will upon the lands of the plaintiff, and hauled and otherwise moved materials for oil wells over and across the same.”
The evidence fails to show that the defendant companies expressly consented to, or even acquiesced in, this destroying of the fences; on the contrary, the field superintendent, when asked whether teams were not driven across the land, answered:
“Not if I could keep them out;” and “Not when I could keep them out, but they would do it at times.”
The evidence relied upon for showing this alleged “kind of courtesy” consists of the following:
“Q. Is it the custom in the oil field for the employes and other parties working for an oil company to enter upon and across other private holdings they are not operating upon?
“A. Not as a rule, without the permission of the landowners.
“Q. Is it the rule with oil companies, taking over holdings, for the parties working for that company and other companies to enter upon the lands being developed?
“A. Yes; that is a courtesy extended between one another.”
[2] We fail entirely to see wherein this establishes a permission extended by “a kind of courtesy” to destroy fences.
The judgment appealed from is therefore set aside, and plaintiff’s suit is dismissed; plaintiff to pay costs in both courts.
*537 On Plaintiffs Application for Rebearing.
The decree herein is amended, so as to condemn defendants to pay the costs in both courts, and, as so amended, is reaffirmed, the right being reserved to the defendants to apply for a rehearing from the present change in the decree, and the plaintiff’s application for a rehearing is otherwise refused.