# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-997


**RAINBOW GUN CLUB, INC., ET AL.**

**VERSUS**

**DENBURY RESOURCES, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-19147
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED AS AMENDED.**

**J. Michael Veron**
**Alonzo P. Wilson**
**J. Rock Palermo III**
**Julia Love Taylor**
**Turner D. Brumby**
**Veron, Bice, Palermo & Wilson, L.L.C.**
**721 Kirby Street (70601)**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Rainbow Gun Club, Inc., et. al.**

**Glenn W. Alexander**
**Jones Law Firm**
**713 Kirby Street**
**Lake Charles, LA 70601**
**(337) 494-4398**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Rainbow Gun Club, Inc., et. al.**

**Edward Saal,  Jr.**
**504 Second Street**
**Gueydan, LA 70542**
**(337) 536-9210**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Rainbow Gun Club, Inc., et. al.**

**Robert L. Cabes**
**Andrew J. Halverson**
**Milling Benson Woodard, LLP**
**P. O. Box 51327**
**Lafayette, LA 70505-1327**
**(337) 232-3929**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **SKH Energy Partners, LP**

**SAVOIE, Judge.**

Defendant, SKH Energy Partnership, LP (SKH), appeals the trial court's judgment holding it liable for its virile share of damages resulting from a subsequent mineral lease assignee's breach of its duty to operate the property as a reasonably prudent operator. In addition, the Plaintiffs appeal the trial court's award of legal interest from the date of judicial demand. For the following reasons, we amend the judgment with respect to the judical interest awarded by the trial court, but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The 170 Plaintiffs in this matter are lessors of various mineral leases as well as the owners of royalties of those leases. Between 1998 and 2001, various Plaintiffs granted multiple mineral leases directly to SKH, whose interest in those leases were ultimately assigned to Denbury Resources, Inc., Denbury Onshore, LLC, and Specter Exploration, Inc. (collectivey, the Denbury Defendants). The leases involved various tracts of land in Cameron Parish, Louisiana. In 2003, Denbury Resources, as the operator, spudded the Rainbow Gun Club Well No. 1 on land covered by the mineral leases at issue, and the well was completed in July 2003. The well produced dry gas until December 2006, and it was then plugged and abandoned in July 2008.

On February 19, 2013, Plaintiffs filed suit against the Denbury Defendants and SKH, as well as Cinco Energy Land Services (Cinco) and Petro E, LLC (Petro E), wherein they allege that as the well was being drilled, drill pipe was stuck in the original hole, and that the stuck pipe could not be, and was not, adequately sealed. Plaintiffs allege that, as a result, there was an "extraneous water invasion" that irreparably damaged the underground gas reservoir and access to the gas

reservoir was lost. Plaintiffs further assert in their petition that due to Defendants' negligence and breach of their obligations under the mineral leases, they are entitled to lost royalty income they would otherwise have received had the well and reservoir not been damaged.

On April 15, 2015, Cinco filed a motion for summary judgment seeking dismissal of Plaintiffs' claims against it, arguing that it did not own a working interest in the well at issue and never owned any interest in the applicable lease(s). Plaintiffs did not oppose Cinco's motion, and their claims against Cinco were dismissed.

On September 25, 2015, Petro E filed a motion for summary judgment seeking dismissal on the grounds that it had no involvement in the drilling of the well at issue. Plaintiffs did not oppose Petro E's motion for summary judgment, and their claims against it were also dismissed.

Prior to trial, Plaintiffs settled with the Denbury Defendants so that at the time of trial on July 11, 2016, SKH was the only remaining Defendant. Plaintiffs and SKH jointly submitted written stipulations in connection with the trial, including stipulations that the operator, Denbury Resources, stuck the drill pipe, that "sticking drill pipe is known by all prudent operators to be an undesireable event that should be avoided at all costs," and that "imprudent and unreasonable actions of the operator, Denbury Resources, . . . caused the loss of recoverable reserves[.]" They further stipulated that prior to the drilling of the well, SKH had assigned 100% of its interest in the applicable mineral leases, so that SKH did not own any of the leases during the drilling and production operations of the well.

The parties also stipulated that, in accordance with the mineral leases at issue, Plaintiffs collectively owned a 0.13123906 royalty interest. During trial,

2

Plaintiffs called an expert witness, William Griffen, who testified that 12.06 billion cubic feet of gas that could have otherwise been recoverable was lost from the well, which equated to $78,772,997.00 in lost revenue.

The trial court ultimately found that SKH, as a solidary obligor under the applicable mineral leaes, was liable to Plaintiffs for one-fourth of the damages, in light of the three Denbury Defendants' settlement with Plaintiffs prior to trial. The trial court further accepted the amount of lost revenue as calculated by Plaintiffs' expert, and, based upon the stipulated royalty interest, found Plaintiffs' total damages to be $10,338,094.08. It then rendered judgment against SKH for one-fourth of that amount, which is $2,584,523.52, along with judicial interest from the date of judicial demand. The total amount of the judgment was divided among the Plaintiffs according to their repsective royalty interests. SKH appealed and Plaintiffs answered the appeal.

## ASSIGNMENTS OF ERROR

Defendant SKH asserts the following as assignments of error:

A. The trial court committed legal error, by holding SKH to be solidarily liabile to the Plaintiffs, for damages arising out of the drilling of a natural gas well on property owned by Plaintiffs. . . .

B. To the extent that this court holds that SKH was a solidary obligor under the leases, the trial court committed legal error by holding that SKH was liable, to the extent of a one-fourth (1/4) virile share of the damages claimed by the Plaintiffs[.]

C. The trial court committed legal error in awarding damages based upon testimony at trial, despite the fact that the Plaintiffs had previously entered into a compromise and settlement with the Denbury Defendants.

Plaintiffs answered SKH's appeal and assert that the trial court erred "in calculating judicial interest from the date of judicial demand rather than the date of the breach of contract."

## STANDARD OF REVIEW

The parties herein stipulated to all relevant facts in this case, and on appeal, they raise issues solely involving the trial court's legal conclusions. "Appellate courts review a trial court's conclusion regarding a question of law to determine whether the conclusion is legally correct. If the conclusions are found to be incorrect, the flawed legal conclusions must be reviewed de novo." *Latiolais v. Bellsouth Telecommunications, Inc.*, 11-383, p. 4 (La.App. 3 Cir. 10/5/11), 74 So.3d 872, 875 (internal citations omitted).

## ANALYSIS

### *Solidary Liability*

In its first assignment of error, SKH argues that it was error for the trial court to find it solidarily liable to Plaintiffs for the lost revenue damages since the parties stipulated that it was Denbury's, and not SKH's, imprudent operations that caused the loss of gas from the well. We disagree.

As noted by Plaintiffs, SKH's liability in this matter does not arise out of negligence, but rather out of breach of the mineral lease(s) at issue, which were owned by SKH and then later assigned to the Denbury Defendants. Louisiana Revised Statutes 31:122 sets forth a lessee's implied obligation to act as a reasonably prudent operator, which "is read into every mineral lease[.]" *Trinidad Petroleum Corp. v. Pioneer Natural Gas Co.*, 416 So.2d 290, 297 (La.App. 3 Cir.), *writ denied*, 422 So.2d 154 (La.1982). Specifically:

> A mineral lessee . . . is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.

La. R.S. 31:122.

> [T]he obligations imposed by Article 122 on a mineral lessee to act as a prudent operator include: (1) the obligation to develop reservoirs discovered; (2) the obligation to explore and test all portions of the leased premises after discovery of minerals in paying quantities; (3) the obligation to protect the leased property against drainage from wells on adjacent lands; (4) the obligation to diligently market the minerals discovered and capable of production in paying quantities.

*Broussard v. Hilcorp Energy Co.*, 09-469, p. 11 (La. 10/20/09), 24 So.3d 813, 820. "'Develop,' as used in this industry, 'contemplates any step taken in the search for, capture, production and marketing of hydrocarbons.' 'Operate' can be defined as any activity leading to the production of oil and gas." *Id.* (internal citations omitted).

The implied duty imposed on a mineral lessee by La.R.S. 31:122 is also imposed on assignees or sublessees. *See* La.R.S. 31:128, which states, "To the extent of the interest acquired, an assignee or sublessee . . . becomes responsible directly to the original lessor for performance of the lessee's obligations." However, even if a mineral lease is assigned to another lessee, the "assignor or sublessor is <u>not relieved</u> of his obligations . . . under a mineral lease unless the lessor has discharged him expressly and in writing." La.R.S. 31:129 (emphasis added).

Therefore, unless expressly discharged in writing by the lessor, the original lessee, along with all future assignees or sublessees, become solidarily liable to the lessor for the whole performance of the lessee's obligations imposed by the mineral lease. *See* La.Civ.Code art. 1974, which states that an "obligation is solidary for the obligors when each obligor is liable for the whole performance." The mineral lessor/obligee may then, "at his choice, . . . demand the whole peformance from any of his solidary obligors" (i.e. lessees, lease assignees, or sublessees). La.Civ.Code art. 1795. While the mineral lessor/obligee may demand

5

the whole performance from any of the solidary obligors, as among themselves, "each [obligor] is liable for his virile portion." La.Civ.Code art. 1804.

Plaintiffs and SKH stipulated that Denbury, who was a mineral lease assignee, violated the prudent operator obligation. SKH, however, argues that the prudent operator obligation is not a solidary obligation, but rather a "several" obligation, which occurs when "each of different obligors owes a separate performance to one obligee," and "produces the same effects as a separate obligation owed to each obligee by an obligor or by each obligor to an obligee." La.Civ.Code art. 1787. SKH further argues that an order from the Louisiana Office of Conservation naming Denbury as the unit operator suspended or extinguished the prudent operator obligation as to SKH since there can only be one legal operator.

SKH's position, however, conflicts with the express language of La.R.S. 31:128 and 31:129, which establishes the solidary nature of the obligations owed by mineral lessees and subsequent lease assignees to the lessor(s). This is made clear by the official comment to La.R.S. 31:129, which states:

> Article 129 deals with both the obligations and liabilities of assignors and sublessors for future performance of the obligations of the original lease and the problem of their accrued obligations or liabilities as of the time of an assignment or sublease. It is obvious from the nature of the sublease that the original lessee remains bound to the original lessor and cannot discharge himself by the device of subleasing. . . . While it is not the intent of this article to change the rule as to the right of the lessor to demand performance from a sublessee who has assumed obligations of the original lease, it is the intent of this article to retain the concept that the prime lessor can continue to demand performance from his lessee unless he has released him in writing. It is also true of present law that an assignor cannot free himself of the obligations of his contract by assignment without consent of his creditor. . . . There is no basis for distinguishing mineral leases from other types of leases in this respect. There are practical reasons for preserving the state of the established law in the case of both subleases and assignments in this particular

6

area. For example, it sometimes happens that a lessor deals with a particular company in preference to others. It should not be possible for a lessee in such a case to unburden himself by either sublease or assignment without the lessor's consent since the lessor may have relied specifically on the solvency and business reputation of the particular lessee. This is clearly the underlying motive for the basic rule that a creditor should not be compelled to accept a new debtor without consent.

We therefore conclude that the trial court was correct in finding that SKH was solidarily liable to Plaintiffs for Denbury's breach of the mineral lease's prudent operator obligation.

## *SKH's Virile Share of Damages*

In its next two assignments of error, SKH argues that the trial court erred in holding it liable for one-fourth of Plaintiffs' damages because Plaintiffs settled with the Denbury Defendants. SKH contends that Plaintiffs' settlement with the Denbury Defendants released SKH from liability or "blocks" any further award of damages to Plaintiffs because the Denbury Defendants owned 100% of the leases at issue at the time of its imprudent operations, and because SKH was not negligent.

As we concluded above, SKH and the three Denbury Defendants were solidarily obligated to the Plaintiffs for the breach of the mineral leases, regardless of which lessee's actions were in breach of the leases.[1] Since the three Denbury Defendants settled with Plaintiffs prior to trial, we look to La.Civ.Code art. 1803, which explains the the effect of a solidary obligor's settlement with the obligee: "Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor." We disagree with SKH's

---

[1] While Plaintiffs also sued Cinco and Petro E, Plaintiffs' claims against them were dismissed, and there is no other indication in the stipulations submitted at trial or in the parties' briefs that there are any other lessees or lease assignee's other than SHK and the Denbury Defendants.

7

position that the "portion" contemplated by La.Civ.Code art. 1803 equates to the percentage of ownership of the mineral lease. Rather, Louisiana Civil Code Article 1804 states: "If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor."

As discussed above, the prudent operator obligation at issue in this case is an implied contractual obligation that is read into the mineral leases; therefore, the lessees and lease assignees have equal virile portions. Since three of the lessees/assignees settled with Plaintiffs, the trial court was correct in reducing SKH's liability for Plaintiffs' damages so that it was only responsible for one-fourth of the damages. We, therefore, affirm the trial court's award of one-fourth of the Plaintiffs' damages against SKH.

### *Plaintiffs' Answer - Judicial Interest*

On appeal, Plaintiffs assert that the trial court erred in calculating judicial interest from the date of judical demand, rather than from the date of the breach of contract. We agree. *Corbello v. Iowa Production Co.*, 01-567 (La.App. 3 Cir. 8/6/03), 851 So.2d 1253, and *Corbello v. Iowa Production*, 02-826, (La. 2/25/03), 850 So.2d 686, make clear that judicial interest in this case should be calcuated from the date of the breach of contract. Therefore, we amend the trial court's judgment to award judicial interest from July 13, 2003, which is the date that Denbury completed the well and the latest date that it could have stuck the pipe at issue. We note that the record does not indicate a specific date that Denbury breached the mineral lease(s) at issue.

8

## **DECREE**

For the reasons stated above, we amend the trial court's judgment to award judicial interest on the damages assessed against SKH to be awarded from July 13, 2003, until paid.  Otherwise, we affirm.  Costs of this appeal are assessed to Defendant, SKH.

**AFFIRMED AS AMENDED.**